**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **K.C., et al** *Plaintiffs,* | § § | |
| | § | Civil Action No. 1:08-cv-456 |
| v. | § § § | |
| **RICHARD NEDELKOFF,et al** *Defendants.* | § § | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**

To The Honorable Judge of Said Court:

Cherie Townsend, James Smith, and Thomas Adamski ("Defendants")[1], through the Attorney General, submit this Response in Opposition to Plaintiffs' Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2). In support of this motion, Defendants respectfully offer the following:

## I. STATEMENT OF THE CASE AND PROCEEDINGS

This lawsuit concerns allegedly unconstitutional policies and procedures in place at the Ron Jackson State Juvenile Correctional Complex in Brownwood, Texas (referred to as "Brownwood"). Brownwood is a juvenile correctional facility operated by the Texas Youth Commission ("TYC") that houses approximately 150 female juvenile offenders who have been convicted of a felony.[2] Plaintiffs seek injunctive relief and allege that certain policies and procedures, including the use of

---

[1] Plaintiffs acknowledge that former Defendants Richard Nedelkoff and Teresa Stroud are no longer proper parties to this action. TYC is no longer in conservatorship, thus, Richard Nedelkoff is no longer the conservator of TYC. Thomas Adamski has replaced Teresa Stroud as the superintendent of Brownwood.

[2] In Plaintiffs' Amended Complaint and Motion for Class Certification, they incorrectly state that youth at Brownwood have committed "acts ranging from minor property offenses to serious person offenses." D.E. 21 at paragraph 24. In fact, after legislative changes in 2007, only juveniles convicted of felonies may be committed to TYC. *See* TEX.FAM.CODE §54.04. "Youth committed to TYC are typically the most serious youthful offenders in the state." Sunset Committee Report on TYC, available at http://www.sunset.state.tx.us/81streports/tyc/appena.pdf.

"solitary confinement", strip searches, and pat searches, violate their constitutional rights and cause physical and emotional injury due, in part, to each Plaintiffs' alleged history of sexual and physical abuse. Docket Entry ("D.E.") 21. Plaintiffs seek certification to bring this lawsuit as a class action, alleging that the policies and procedures of which they complain affect all offenders confined in Brownwood and all offenders who may reside there in the future. D.E. 2.

Plaintiffs' original motion for class certification was stricken by the Court on October 3, 2008. D.E. 28. Plaintiffs renewed their motion for class certification on December 9, 2008. D.E. 38. Defendants assert that Plaintiffs are misinterpreting the policies concerning disciplinary actions, taking isolated incidents concerning five offenders at Brownwood and insisting that those alleged instances are "policies" that impose "punitive solitary confinement[3]"on any offender without due process. Defendants assert that (1) the policies concerning Security and searches do not violate any law or Constitutional right of any offender, and (2) the events alleged by Plaintiffs,and alleged injuries, are not the result of any policy or procedure. Plaintiffs cannot meet any requirement of Federal Rule of Civil Procedure 23, thus, class certification is inappropriate.

## II. STANDARD FOR CLASS CERTIFICATION

Plaintiffs seek to certify a class under Federal Rule of Civil Procedure 23(a) and 23(b)(2). D.E. 38. A court may certify a class under Federal Rule of Civil Procedure 23 only if the proposed class meets all the requirements of section (a) and at least one prong of section (b). Under Rule 23(a), the party seeking class certification must show: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class, (3) the claims

---

[3] What Plaintiffs call "solitary confinement" is, presumably, the disciplinary process utilized at Brownwood and administered in the Security building. Offenders are referred to security intake for disciplinary reasons, and may be admitted into the Security or Re-Direct programs, described in Section III. Offenders, however, may also enter Security and be placed in solitary cells if they are on suicide alert, or on the offender's request, known as "self-referral."

or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. FED.R.CIV.P. 23(a). "A district court must rigorously analyze Rule 23's prerequisites before certifying a class." *Spence v.Glock, Ges.m.b.H.*, 227 F.3d 308, 310 (5th Cir.2000), with "[t]he party seeking class certification [having] the burden of showing that the requirements for a class action have been met,"*Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 573 (5th Cir.1995). Such a showing must be made with proof, for none of Rule 23's requirements can be presumed. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481-82 (5th Cir.2001).

## III. CHALLENGED POLICIES

"Although 'the strength of a plaintiff's claim should not affect the certification decision,' it is necessary for the district court to go beyond the pleadings to determine whether the requirements of Rule 23 have been met: 'a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir.2007) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996)). The Court must also consider "how a trial on the merits would be conducted" if the class is certified. *Castano,* 84 F.3d at 740. With this in mind, Defendants provide this Court with the following information related to the two challenged policies, as they exist now at Brownwood.[4]

### 1. Security (referred to as "Solitary Confinement"by Plaintiffs.)

The Brownwood campus consists of several buildings including dormitories, an education

---

[4] All policies and facility-specific information are gathered from the affidavit of superintendent Thomas Adamski, attached as Exhibit A.

facility, a gymnasium/auditorium, a vocational building, a chapel, and a building called Security. Offenders reside in dorms unless they are admitted into Security. Security is utilized primarily for safety and discipline. The Security building consists of 29 single occupancy cells, 3 day rooms, showers, a control picket, and administrative offices. Offenders are referred to Security in one of three ways: (1) by staff members for rule violations, (2) by staff members for suicide alerts, or (3) on self-referral. When an offender is referred to Security, she will be released and returned to general population within one to two hours unless she is admitted to security intake. Most offenders referred to Security will be released back to the dorms within 24 hours. The decision to admit an offender into security intake is made by the Security Duty officer after consulting with staff and the youth. Security intake is a temporary status which allows the youth to cool down and regain composure, as well as providing staff time to determine whether further disciplinary measures are necessary.

Within 24 hours of admission to security intake, a youth will be admitted into one of the following programs: the security program, Institution Detention Program (IDP), or protective custody[5]. The security program is a short-term disciplinary status, while IDP is longer-term[6]. Before entering either the security program or IDP, a hearing is held. During the hearing, a decision-maker will review the incident report, and the offender and her advocate are allowed to present any extenuating circumstances and/or reasons why return to general population is preferred. A mental health staff member and the offender's case manager are also involved in the decision-making process. If the decision is made to admit the offender into the security program, the Director of

---

[5] Separate policies exist for protective custody, which is reserved for offenders exhibiting self-injurious behaviors rather than disciplinary problems.

[6] Whether an offender is held in security intake, security program, IDP, or Re-Direct, she will still be in the Security building. However, an offender is not confined to her cell. Education, exercise, counseling, and showers all take place outside the cell.

Security or other authorized staff member may release the offender at any time. Additionally, the offender has the right to appeal the decision. If an offender is admitted into the security program, she may remain for up to 24 hours, or she may be released early by authorized staff. An offender will not remain longer than 24 hours unless she continues to demonstrate disruptive and dangerous behavior.[7]

If an offender's behavior is especially disruptive or poses a threat, she will likely enter IDP rather than the security program. IDP is a temporary status, lasting between 5 and 10 days, where the offender remains in Security and an assessment team determines whether admission into the Re-Direct program is appropriate. The assessment team is comprised of education staff, case managers, medical staff, and daily living specialists. Additionally, mental health staff must approve admission into Re-Direct. The Re-Direct program is reserved for those few offenders who, while living at the facility, have committed serious offenses such as assault, sexual assault, escape, or riot. Offenders admitted to the Re-Direct program have the same hearing as described above, with the same right to appeal and right of an authorized staff member to override the decision to admit.

If admitted into Re-Direct, the offender must work through three stages before returning to dorm life. In stage 1, which typically lasts 7 days and is the most restrictive, an offender remains in Security, while still engaged in education, exercise, therapy, and counseling in areas outside the cell. In stage 2, the offender is allowed to attend education and group therapy with her peers in the dorms, with remaining activities (including exercise and sleep) taking place in Security. In stage 3, all activities take place on the dorms except sleep.

---

[7] This information applies to offenders who enter Security due to behavioral and disciplinary problems. The policies concerning offenders who enter Security for suicidal behaviors are different, as discussed in Exhibit A.

The Re-Direct program is reserved for offenders who have demonstrated the worst behaviors and is an effort to stop the behavior and reintegrate these offenders back into dorm and social life. A committee assigned to each offender on the Re-Direct program routinely assesses the offender's progress and develops an individualized treatment plan to help the offender reintegrate, including involving the offender's case managers and family in the process.

**2. Searches**

Offenders are searched for contraband when they return from work assignments, family visitation, and when they are referred into Security. These routine pat searches are conducted in the Security building where the offenders are offered the most privacy. In addition, some circumstances require additional pat searches when the offender is not in Security. Offenders are pat-searched so that they do not have to undress. They are required to remove their bras, socks, and shoes because contraband is typically hidden in these areas. An offender will remove her bra herself either with her shirt still on, if possible, or behind a closed door. Two staff members are present, with a female staff member performing the actual pat down.

Strip searches are performed under certain limited circumstances after permission from the superintendent, assistant superintendent, or administrative duty officer. One example of a circumstance that would require a strip search is when an offender is on Suicide Alert, who staff suspect is carrying contraband to self-injure, but the contraband was not discovered by the pat search. All searches are performed quickly, under strict guidelines and for the purpose of ensuring the safety of offenders and staff alike.

## IV. ARGUMENT AND AUTHORITIES

### A. Plaintiffs cannot meet their burden under Fed. R. Civ. Proc. 23(a)

**1. Numerosity.** To establish numerosity for purposes of Rule 23(a), Plaintiffs must demonstrate that the class is so numerous that joinder of all members is impracticable. FED.R.CIV.P. 23(a)(1). The threshold question is generally the practicability of joinder, which depends on the size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion. *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir.1980). The mere allegation that the class is too numerous to make joinder impracticable, by itself, is not sufficient to meet this prerequisite. *Fleming v. Travenol Laboratories, Inc.*, 707 F.2d 829, 833 (5th Cir.1983).

Plaintiffs allege that the putative class will be comprised of all offenders presently confined in Brownwood and all offenders who may reside there in the near future. Currently there are approximately 150 offenders confined in Brownwood. The number fluctuates, but will remain near 150 as offenders are released and others are admitted. To support their argument, Plaintiffs rely on findings of the Fifth Circuit that state a class with 100 to 150 members is sufficient to satisfy the numerosity requirement. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir.1999). Plaintiffs' focus on the number is misguided, however, as it is not simply the size of the class, but rather, whether joinder of putative plaintiffs is impracticable. "The basic question is practicability of joinder, not number of interested persons per se." *Garcia*, 618 F.2d at 267.

In affirming the district court's finding that the numerosity requirement was met in *Mullen*, the Fifth Circuit stated that "the additional factors mentioned by the district court supported its finding of numerosity. *Mullen*, 186 F.3d at 624. Those additional factors, including transient nature of casino

employment, geographic dispersion, and fear of workplace retaliation, are not present here. The putative class will be comprised of female juvenile offenders housed at Brownwood. There is no impracticability of joinder. The names and locations of all putative class members are well known to all parties in the case. Where the identities and addresses of the proposed class members are easily ascertainable, the practicability of joinder is increased. *See Garcia*, 618 F.2d at 367; *see also Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2 1030, 1038 (5th Cir.1981)(stating that one factor to determine numerosity and impracticability is the "the ease with which class members may be identified"). Plaintiffs and putative class members are in constant contact by the nature of their confinement. Any putative class member who wishes to join this lawsuit can do so. Plaintiffs have failed to meet their burden of showing that joinder is impracticable.

2. **Commonality.** To establish commonality, Plaintiffs must show that there are questions of law or fact common to the class. FED. R. CIV. P. 23(a)(2). While the threshold for commonality is "not high," it does require "at least one issue whose resolution will affect all or a significant number of the putative class members." *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir.1993). Plaintiffs argue that commonality is met because the common legal question is "whether these practices [of solitary confinement and searches] violate girls' [constitutional] rights". D.E. 38. However, resolution of conditions of confinement issues is extremely impractical in the context of a class action. Challenging a condition of confinement "requires the court to make a detailed inquiry into all of the conditions of the prison, as well as the circumstances that have created the conditions." *Stewart v. Winter*, 669 F.2d 328, 335-36 (5th Cir.1982) (upholding denial of class certification because common question of law or fact were not present in case challenging physical conditions at various county jails). Plaintiffs argue that use of solitary confinement and pat searches violate

Plaintiffs' constitutional rights, however "the court must consider the totality of the conditions to determine whether they violate contemporary standards of decency." *Id.* As discussed above, the manner in which each offender may be referred or admitted to Security, the length of time an offender remains in Security, and the circumstances occurring while in Security vary dramatically for each offender.

Here, there is no one issue whose resolution will affect all or a significant number of the putative class members. Whether or not the conditions experienced by Plaintiffs violate the Plaintiffs' constitutional rights is an issue that is specific to each Plaintiff, and resolution will have virtually no effect on the majority of offenders. Most offenders do not have the severe disciplinary histories of Plaintiffs, which resulted in Plaintiffs' extended stays in Security.[8] Because most offenders have not been admitted into Security as often, they would not be subject to search as often. Additionally, because most offenders have not engaged in the assaultive conduct that Plaintiffs have, most offenders have not been subjected to a strip search. In short, the resolution of issues affecting the Plaintiffs will not affect all or a significant number of the putative class, thus, Plaintiffs have failed to meet the commonality requirement.

**3. Typicality**. To establish typicality, Plaintiffs must show that the claims of the representative parties are typical of the claims or defenses of the class. FED.R.CIV.P. 23(a)(3). The typicality requirement is met where "the claims arise from a similar course of conduct and share the same legal theory." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir.2002). The "critical inquiry" for

---

[8] Defendants assert that counsel for Plaintiffs chose the five original Plaintiffs based specifically on their unique circumstances of being more frequently admitted into Security more frequently than not, and not because these five Plaintiffs are representative of the offenders as a whole. Counsel for Plaintiffs, Mie Lewis, spent considerable time interviewing the students at Brownwood, as discussed in her online interview "TYC Kids Need Healthy Relationships;" available at http://gritsforbreakfast.blogspot.com/2007/06/tyc-kids-need-healthy-relationships.html.

typicality is "whether the class representative's claims have the same essential characteristics of those of the putative class." *James v. City of Dallas, Texas*, 254 F.3d 551, 571 (5th Cir.2001). Although Plaintiffs complain that use of solitary confinement and searches violate their constitutional rights, the course of conduct described as unconstitutional in Plaintiffs' Amended Complaint is not typical, but is instead unique to each Plaintiff. Plaintiffs, as class representatives, cannot maintain their claims have the same essential characteristics of the putative class. Accordingly, they cannot meet the typicality requirement.

As discussed above, offenders may be referred to Security for rule violations, for suicidal behavior, or on self-referral. Plaintiffs' complaint fails to differentiate between these very different circumstances that surround an offender's initial entry into Security. Furthermore, most offenders are not admitted to Security, but will instead be released back to general population within two hours. The few offenders who are admitted are afforded a hearing where the offender and her advocate can present specific reasons why the offender should return to general population, further making the "course of conduct" surrounding Security more unique and less specific to the class as a whole.

To meet the typicality requirement, Plaintiffs' claims must arise from a similar course of conduct and share the same legal theories as the class, but Plaintiffs' claims arise from very atypical and unique courses of conduct. It is clear from a review of the policies regarding Security and searches that Plaintiffs' claims of being kept in oppressive solitary confinement for months and experiencing severe emotional trauma from being searched are not typical of the putative class. Whether Plaintiffs' rights were violated by the policies at Brownwood depends on the course of conduct surrounding each Plaintiff's referral and admission into Security, the due process afforded, the behavior the Plaintiff demonstrated while in Security, and the ongoing circumstances that may

have extended her stay. Plaintiffs' claims regarding use of "solitary confinement" is not typical, nor does it arise from a similar course of conduct, as other offenders' experiences, if any, with the use of "solitary confinement."

Regarding searches, Plaintiffs' Amended Complaint states that Plaintiffs are "degraded and humiliated" and suffer "profound emotional damage" by the searches because the searches "exacerbate" each offenders' pre-existing emotional condition. D.E. 21. Plaintiffs allege they suffered previous "sexual, physical, and/or emotional abuse" that is "severe and sustained." *Id.* However, Plaintiffs fail to present any evidence to support they are injured by the searches, that the searches are "unnecessary," or that Plaintiffs' claims or injuries are typical to the putative class. Because an offender is pat searched before she is admitted into Security, those who have been admitted more frequently will necessarily be pat searched with more frequency, further differentiating Plaintiffs' complaint against searches from those of the putative class.[9] Furthermore, the due process and other Constitutional considerations concerning validity of searches will be different in each offender's situation: an offender on suicide alert with a history of injuring herself will require a more extensive search than an offender coming back from a work assignment undergoing a routine pat search. Because the course of conduct and legal theories behind the searches may vary dramatically, Plaintiffs cannot meet the typicality requirement for this claim.

**4. Adequacy of Representation.** To establish adequacy of representation, Plaintiffs must show that they would fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). In order to satisfy this requirement, Plaintiffs must show that (1) the class representatives share common

---

[9] A majority of the 75 Brownwood youth interviewed by this office reported they approved the pat search method, agreed that is was necessary, and did not feel violated by the search.

interests with the class members, and (2) Plaintiffs and their counsel will adequately represent the class. *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir.1973). Here, Plaintiffs cannot meet this requirement because the named plaintiffs do not share a common interest with the class members, a conflict of interest will likely exist between plaintiffs and putative class members, and there has been no showing that plaintiffs can adequately represent the class.

**a. Common interests/conflict of interest** - Differences between named plaintiffs and absent class members make named plaintiffs inadequate representatives only if those differences create a conflict of interest between the named plaintiffs and the class members. *Jenkins v. Raymark Industries,* 782 F.2d 468, 472 (5th Cir.1986).

Plaintiffs cannot represent the putative class of "all girls confined at Brownwood" because the Plaintiffs would inherently have a conflict of interest with members of the putative class. As described above, the majority of offenders at Brownwood have not been admitted into Security longer than 24 hours. An offender would only remain in Security for an extended stay if her behavior necessitated separation from the other offenders. Because this is done to protect the safety of all, a conflict exists between those seeking to enjoin use of Security and those requiring protection from assaultive offenders. Plaintiffs assert there are no conflicts and that Defendants "misconstrue the nature of the relief sought." However, the nature of the relief sought is vague and fails to differentiate between a referral to Security and admittance into Security, the security program and the Re-Direct program, and the different grounds of referral, including suicide alert and self-referrals.

**b. Adequacy of representation** - "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481-82 (5th Cir.2001). In particular, Rule 23(a)(4) requires that class

representatives demonstrate their "willingness and ability...to take an active role in and control the litigation and to protect the interests of absentees..." *Id.* This inquiry requires the court to "be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times. *Id.* A class representative must "possess a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation. *Id.* That the proposed class representative gained knowledge of the facts and issues from counsel is insufficient. *See Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir.2005). ("Class representatives must satisfy the court that they, and not counsel, are directing the litigation. To do this, class representatives must show themselves sufficiently informed about the litigation to manage the litigation effort."); *Berger,* 257 F.3d at 438 n. 18 ("Plaintiffs should understand the actions in which they are involved, and that understanding should not be limited to derivative knowledge acquired solely from counsel."). Plaintiffs have submitted no showing that they, and not counsel, are directing the litigation. Therefore, they have not satisfied this requirement.

**B. Plaintiffs cannot meet their burden under Rule 23(b).**

Class certification under Rule 23(b)(2) is appropriate if the requirements of 23(a) are satisfied and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief...with respect to the class as a whole. FED. R. CIV. P. 23(b)(2). To qualify for class-wide injunctive relief, class members must have been harmed in essentially the same way. *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir.2000). Additionally, the injunctive relief sought must be specific. FED. R. CIV. P. 65(d); *see also Ala. Nursing Home Ass'n v. Harris*, 617 F.2d 385, 387-88 (5th Cir.1980). Plaintiffs fail to specify exactly what they seek through injunctive relief. Plaintiffs' prayer for relief requests the Court permanently

enjoin defendants from "engaging in the unlawful acts described herein." Defendants assert that they have not and do not engage in any unlawful acts and that the existing policies on Security (what the Plaintiffs call "solitary confinement") and searches are not unconstitutional. Plaintiffs suggest that Defendants be enjoined from using "solitary confinement" but, as described above, there is no policy that imposes punitive solitary confinement, as described by the Plaintiffs, and Plaintiffs' relief sought is vague and not specific. The policy concerning the use of Security is not unconstitutional, and Plaintiffs' requested injunctive relief does not address Security as it is applied to most offenders. The difficulty in specifying exactly what Plaintiffs seek from an injunction highlights the fact that individualized issues here overwhelm class cohesion. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir.1998).

Rule 23(b)(2) certification is also inappropriate when the majority of the class does not face future harm. *See Bolin*, 231 F.3d at 978. The conditions as described by Plaintiffs, and the harm allegedly resulting from those conditions, are not something the majority of the class has or will encounter. The only offenders at Brownwood who would be referred to Security are those who commit rule violations, threaten self-harm, or request to be admitted into Security. Of those, few are admitted into the security program, and only after a hearing is held to determine that admission is appropriate. Even fewer would commit acts that would make them eligible for Re-Direct. The majority of the class does not face future harm because it is unlikely the majority of the class will demonstrate the severe behavioral problems that would warrant extended stays in Security. Additionally, there is no evidence that offenders who are subject to searches face any harm, or that they are in danger of exacerbating a pre-existing emotional condition, as alleged by the Plaintiffs. Thus, certification based on class-wide injunctive relief is inappropriate.

## CONCLUSION

Class certification is not appropriate because Plaintiffs have not met the prerequisites of Rule 23. Accordingly, Defendants respectfully request Plaintiffs' Renewed Motion for Class Certification be denied.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

C. ANDREW WEBER
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ Bruce R. Garcia
BRUCE R. GARCIA
Assistant Attorney General
State Bar No. 07631060

P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080/495-9139 Fax

**ATTORNEYS FOR DEFENDANTS**

## NOTICE OF ELECTRONIC FILING

I, BRUCE R. GARCIA, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing **Defendants' Response in Opposition to Plaintiffs' Renewed Motion for Class Certification**. In accordance with the Electronic Case Files System of the Western District of Texas, on this the 19th day of December, 2008.

/s/ Bruce R. Garcia
BRUCE R. GARCIA
Assistant Attorney General

## CERTIFICATE OF SERVICE

______I, BRUCE R. GARCIA, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendants' Response in Opposition to Plaintiffs' Renewed Motion for Class Certification** has been served by placing same in the United States Mail on this 19th day of December, 2008, addressed to:

Deborah Labelle
Law Offices of Deborah Labelle
221 North Main Street
Suite 300
Ann Arbor, MI 48104

Mie Lewis
ACLU Foundation
125 Broad St., 18th Floor
New York, NY 10004

Gretchen Sims Sween
Dechert, LLP
300 West 6th Street, Ste. 1850
Austin, TX 78701

Lisa Graybill
ACLU Foundation of Texas
P.O. Box 12905
Austin, TX 78711

/s/ Bruce R. Garcia
BRUCE R. GARCIA
Assistant Attorney General