**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

K.C., on behalf of herself and all others similarly situated, *et al.*,

Plaintiffs,

v.

Richard Nedelkoff, in his official capacity as Conservator of the Texas Youth Commission, *et al.*,

Defendants.

Civil No. 1:08-cv-00456-SS

Hon. Sam Sparks

**PLAINTIFFS' REPLY IN SUPPORT OF CLASS CERTIFICATION**

Plaintiffs respectfully submit this reply to Defendants' opposition to class certification and in support of Plaintiffs' motion for class certification.

## ARGUMENT

Defendants' opposition fails to take into account this Court's broad discretion to certify a class. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007). Moreover, determining whether class requirements are met does not depend on the underlying merits of the case, and "[c]lass certification hearings should not be mini-trials on the merits of the class or individual claims." *Id.* at 724; *Unger v. Amedisys, Inc.*, 401 F.3d 316, 320–21 (5th Cir. 2005).[1] Finally, Defendants' arguments are framed in language incorrectly identifying Plaintiffs and the relief they seek.[2]

[1] When necessary, a district court "may sanction controlled discovery" before resolving a class certification motion. *Unger*, 401 F.3d at 320–21.

[2] Throughout their opposition, Defendants assert that Plaintiffs have been "convicted of felonies," and refer to Plaintiffs as "offenders." Such terminology is factually incorrect. Children in Texas Youth Commission (TYC) custody have been found to be "delinquent" but have not been "convicted" of any crime. Tex. Fam. Code Ann. § 51.13 (2007) ("an order of adjudication or disposition in a proceeding under this title is not a conviction of crime."). The primary purpose of the juvenile justice system is not to punish but to serve the best interests of each child. Tex. Fam. Code Ann. § 51.01 (2007).

### A. Defendants Do Not Raise Any Legitimate Challenge to Class Certification

#### 1. Defendants' Challenge Regarding Numerosity Fails

Defendants admit that the current class size is approximately 150—which far exceeds the lower limit of the numerosity requirement. (Defs.' Opp'n. 7 (Docket Entry ("D.E.") 42).) *See Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (upholding district court's certification of a class that had between 100 and 150 members). In addition to sheer numbers, other factors support a finding that joinder would be impracticable in this case. The identities of future class members, namely, girls who in the future will be confined in Brownwood, are unknown and fluid. *See id.* (emphasizing that the foreseeable existence of future class members demonstrated that joinder of members in individual litigation was impractical). Incarcerated girls are constantly being released, while others are being confined, underlining the difficulty that the hundreds of current and future class members would experience in attempting to maintain individual legal actions given the frequently brief duration of their class membership. *See Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of Mississippi*, 637 F.2d 1014, 1022 (5th Cir. 1981). Moreover, joinder is impractical because the named Plaintiffs and their counsel do not know the names of all class members and cannot contact them; such information is not publicly available. Because girls are held in separate units within Brownwood, girls in a single unit may not know or be able to contact girls in other units.

Further, the fact that Plaintiffs are children, and are intrinsically less educated and experienced than the typical adult, makes it less likely that they would be able to protect their rights through individual litigation. *See Christina A. v. Bloomberg,* 197 F.R.D. 664, 667, 672

(D.S.D. 2000); *Jane B. v. New York City Dep't of Soc. Servs.*, 117 F.R.D. 64, 70 (S.D.N.Y. 1987); *Moncravie v. Dennis*, 89 F.R.D. 440, 442–43 (W.D. Ark. 1981).

Finally, Defendants control every aspect of the lives of the putative class members, from when they eat to whether they must spend hours or days in solitary confinement. Given this relationship, putative class members may legitimately fear that an individual filing would expose them to retaliation. *See Mullen*, 186 F.3d at 624.

**2. Defendants' Challenge Regarding Commonality Fails**

Defendants suggest that the facts underlying class members' claims must be identical. Yet the Fifth Circuit has expressly stated that "the interests and claims of the various plaintiffs need not be identical." *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (internal citation omitted); *see also James v. City of Dallas*, 254 F.3d at 570 (exlaining that Plaintiffs must merely "allege that there exist 'questions of law or fact common to the class'") (quoting *Mullen*, 186 F.3d at 625). The commonality test is "met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen*, 186 F.3d at 625 (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)).

The claims of the named Plaintiffs and the putative class members share multiple questions of law and fact, including whether Defendants' policies and practices permit the imposition of punitive solitary confinement for self harm; whether such policies and practices permit invasive body searches; whether such policies and practices violate Plaintiffs' rights under the Fourth, Eighth, and Fourteenth Amendments; and whether they violate Plaintiffs' rights under customary international law. Each member of the class is subject to the policies challenged in this suit. Whether some girls are searched or sent to solitary confinement more

than others is irrelevant to the instant inquiry. It is sufficient that by virtue of Defendants' policies, each girl is at constant risk of punitive isolation or invasive search in violation of her rights.[3]

Furthermore, although discovery in this action has not yet begun, available evidence suggests that the challenged practices are not isolated but widespread. Last year, a neutral panel of experts recognized the pervasive use of isolation and other punitive practices by Defendants and called for their reduction. (Declaration of Mie Lewis ("Lewis Decl.") Ex. A at 48) (advising Defendants to "carefully ration" "the use of seclusion" and other uses of force against children in custody). In addition, Defendants' own records show that Defendants referred from 150 to 300 girls to isolation each month between September 2004 and September 2007. (Lewis Decl. Ex. B.) Given that there are about 150 girls confined at Brownwood at any one time, these numbers belie Defendants' claims that referrals to security are unique to a small group of particularly troublesome girls. It is also clear from these records that Defendants refer girls to isolation not only in response to serious violent or threatening behavior but for many reasons including "destruction of property," "failure to report," and "disruption of program." (Lewis Decl. Ex. B.)

Defendants' own assertions further demonstrate that the commonality requirement has been met. Defendants never claim that members of this putative class who engage in the same behavior are treated differently; nor that the named class representatives have been subjected to unauthorized staff actions. Indeed, Defendants claim that body searches conducted on the representatives are "conducted under strict guidelines," demonstrating that a common policy

---

[3] *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("It would be odd to deny an injunction to inmates who plainly proved [a violation of rights] in their prison on the ground that nothing yet had happened to them"); *Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir. 1982) (common claims found in a juvenile conditions case where all of the incarcerated children "were in danger of being subjected" to the enjoined practices."). Given that each girl is committed to the TYC based on a finding that she has committed an act so serious as to justify a juvenile placement, the Court is entitled to draw the common-sense inference that many, if not all, girls may be subjected to punitive isolation.

applies to all the girls subjected to these searches. (Defs.' Opp'n 6.) Further, every girl, regardless of individual behavior, is subjected to an intrusive body search whenever she returns from a work assignment or family visitation, as well as when she is referred to security. *Id.* At a minimum, Defendants' description of their policies demonstrates that any girl who wants to visit with her family or must participate in a work assignment is, as a matter of routine, subjected to the intrusive search policy. Similarly, Defendants never claim that conditions among the twenty-nine isolation cells they maintain differ significantly. Nor do Defendants argue that staff fail to apply their rules uniformly to all the girls. Indeed, Defendants describe a set of common programs and procedures for girls in isolation. *Id.* at 4–5.

Furthermore, Defendants' statement that class certification is impractical in the context of challenges to conditions of confinement is undermined by decades of precedent to the contrary. *See, e.g.*, *Overton v. Bazzetta*, 539 U.S. 126 (2003); *Smith v. Sullivan*, 553 F.2d 373 (5th Cir. 1977). *Stewart v. Winter*, 669 F.2d 328, 335–36 (5th Cir. 1982), cited by Defendants, actually supports Plaintiffs' position. *Stewart* concerned a challenge to conditions at every county jail in Mississippi's eighty-two counties, *id.* at 329, whereas this case concerns only a single facility. In addition, the plaintiffs in *Stewart* asserted that the overall conditions of confinement violated their constitutional rights; the specific condition in question varied from class member to class member. *Id.* at 330. Here, Plaintiffs challenge only two specific policies. Furthermore, the court in *Stewart* suggested that class certification would be appropriate if the Plaintiffs could identify "some common violation of the [Eighth Amendment] to justify a class action" in all eighty-two state jails. *Id.* at 337. The court's reasoning necessarily implies that litigation against the conditions of confinement in a single facility, like Brownwood, is suitable for class action

treatment because the plaintiffs in such litigation allege a common violation of the constitutional standard.

**3. Defendants' Challenge Regarding Typicality Fails**

Here, each girl suffers the same legal violations when placed in solitary confinement and when she endures an invasive body search, regardless of her individual disciplinary history. The claims of both the named Plaintiffs and the putative class members therefore rely on the same legal theory: that Defendants' use of solitary confinement as punishment and reliance on invasive body searches violate Plaintiffs' rights. This shared legal claim is sufficient to support a finding of typicality. *See Mullen*, 186 F.3d at 625. Indeed, such claims are routinely found both common and typical. *See, e.g., Susan J. v. Riley*, --- F.R.D. ----, 2008 WL 4708561, at *17–*18 (M.D. Ala. Oct. 24, 2008); *Alexander A. v. Novello*, 210 F.R.D. 27, 33 (E.D.N.Y. 2000); *Christina A.*, 197 F.R.D. at 668–69 (D.S.D. 2000); *Jane B. v. New York Dep't of Soc. Servs*, 117 F.R.D. 64, 70 (S.D.N.Y. 1987); *Moncravie v. Dennis*, 89 F.R.D. at 442. As to remedy, the named Plaintiffs seek an injunction to prevent Defendants from continuing policies and practices that, as Defendants admit, subject all class members to intrusive body searches and threaten all class members with segregated confinement under standard conditions.

Defendants attempt to rebut Plaintiff's typicality showing by presenting an argument on the merits. (Defs.' Opp'n 10.) Even if Defendants' purported justifications for their practices were accurate and legally sufficient—and Plaintiffs maintain that they are not—the underlying merits of a case should not affect the outcome of a motion for class certification. *Cole*, 484 F.3d at 724.

**4. Defendants' Challenge Regarding the Adequacy of Representation Fails**

Plaintiffs have retained counsel with substantial experience prosecuting claims concerning civil rights, conditions of confinement, and in representing class actions. *Mullen.* 186 F.3d at 625; *see also* Pls.' Mot. Class Cert. 6–8 (D.E. 38). No putative class member has sought to intervene here. Further, it is hard to imagine why any putative class member would oppose assuring constitutional conditions of confinement within the Security Building or protecting the entire class from intrusive body searches, particularly because, as Defendants' own opposition indicates, the entire putative class is subjected to these body searches. Plaintiffs and class members all have an interest in avoiding punitive isolation and invasive body searches, and in being confined in a safe environment. That Defendants have subjected Plaintiffs to varying amounts of isolation and that Plaintiffs have suffered varying degrees of harm does not pose an obstacle to the named Plaintiffs' representation of the unnamed class members. *Mullen,* 186 F.3d at 626.

Defendants imply in their opposition that, because the named Plaintiffs are children, they are unable to educate themselves about the claims and direct litigation and are therefore not adequate class representatives. (Defs.' Opp'n 13.) Defendants cite two cases involving alleged securities fraud in support of their challenge to the adequacy of representation, but such cases raise entirely different issues than do challenges to abusive conditions in a juvenile facility. The cases cited by Defendants turn on the concern that the nominal plaintiffs had no real knowledge or understanding of the litigation. *See, e.g., Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 n.18 (5th Cir. 2001) (stating that the named plaintiffs' understanding "should not be limited to derivative knowledge acquired solely from counsel."). The knowledge of the named Plaintiffs here, in contrast, was acquired by direct experience with the challenged conditions. Defendants

themselves assert that Plaintiffs' counsel spent considerable time talking to putative class members (Defs.' Opp'n 9 n.8), refuting any suggestion that the named Plaintiffs are simply figureheads in this litigation.

In addition, each named Plaintiff sues here through her parent or legal guardian—her next friend. It is therefore the next friends, all of whom are adults, who are in fact the Plaintiffs in this case. Both the children and their next friends are adequately informed and are able to represent the class. *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484–85 (5th Cir. 1982) (holding that a next friend who testified only that he had read the complaint and understood that he represented a class was an adequate representative).

**B. This Case is a Paradigmatic Rule 23(b)(2) Action**

Defendants argue that the relief that Plaintiffs seek is unclear while citing *Castano v. American Tobacco Company*, 84 F.3d 734, 740 (5th Cir. 1996), for the principle that a court must look forward to how trial would be conducted in considering a class certification motion. (Defs.' Opp'n 3.) First, this criterion does not apply to 23(b)(2) actions but to class certification under Rule 23(b)(3). Rule 23(b)(2) does not include a manageability criterion. *See Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1105 (5th Cir. 1993) ("questions of manageability and judicial economy are…irrelevant to 23(b)(2) class actions."). Moreover, Rule 65(d) calls for specificity in the contents of "orders granting an injunction," not in a plaintiff's prayer for relief. In fact, such a requirement is inconsistent with the direction in *Lewis v. Casey,* 518 U.S. 343, 362–63 (1996) (finding state defendant entitled to an opportunity to participate meaningfully in development of final remedial plan for constitutional violation regarding criminal justice system before one is imposed by court).

Even were specificity required—which it is not—the basic outlines of the injunctive

relief Plaintiffs seek are clear: an end to strip and invasive pat searches of girls; substitution of non-invasive security procedures for intrusive searches that require the girl to disrobe partially before being patted down; the maintenance of cells in TYC's isolation unit at an appropriate temperature; the provision of appropriate bedding at all times; assurance that any special suicide-prevention garment substituted for a girl's regular clothing will provide adequate warmth and coverage; the imposition of strict limits in compliance with domestic and international standards on length of any isolated confinement; the prohibition of the use of pepper spray; and the provision of appropriate mental health services to girls in crisis. Defendants' critique regarding the relief sought through this action rings hollow.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(2) should be granted, and Plaintiffs' counsel should be appointed the represent the certified class pursuant to Rule 23(g). If the Court finds that any requirement has not been met, the Court should authorize strictly limited discovery before deciding this motion.

Respectfully submitted,

BY: /s/ Mie Lewis

Mie Lewis (admitted *pro hac vice*)
Lenora M. Lapidus (admitted *pro hac vice*)
Emily J. Martin (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
Telephone: (212) 519-7848
Fax: (212) 549-2580
mlewis@aclu.org
llapidus@aclu.org

Lisa Graybill
Texas State Bar No. 24054454
AMERICAN CIVIL LIBERTIES UNION OF TEXAS
P.O. Box 12905
Austin, TX 78711
Telephone: (512) 478-7300
Fax: (512) 478-7303
lgraybill@aclutx.org

Steven M. Watt (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
HUMAN RIGHTS PROGRAM
125 Broad St., 18th Floor
New York, NY 10004
Telephone: (212) 519-7870
Fax: (212) 549-2580
swatt@aclu.org

Elizabeth Alexander (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 15th St, 6th Fl.
Washington, D.C. 20005
Telephone: (202) 393-4930
Fax: (202) 393-4931
ealexander@npp-aclu.org

Deborah LaBelle (admitted *pro hac vice*)
221 N. Main St., Ste. 300
Ann Arbor, MI 48104
Telephone: (734) 996-5620
Fax: (734) 769-2196
deblabelle@aol.com

Steven R. Daniels
Texas State Bar. No. 24925317
Gretchen S. Sween
Texas State Bar No. 24041996
DECHERT LLP
301 West 6th Street, Suite 1850
Austin, TX 78701
Telephone: (512) 394-3000
Fax: (512) 394-3001
steven.daniels@dechert.com
gretchen.sween@dechert.com

Robert A. Cohen (admitted *pro hac vice*)
Erika B. Gellert (admitted *pro hac vice*)
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Fax: (212) 698-3599
robert.cohen@dechert.com
erika.gellert@dechert.com

Dated: December 30, 2008

**CERTIFICATE OF SERVICE**

I, MIE LEWIS, hereby certify that on December 30, 2008, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system that will send a notification of such filing to all counsel of record who have registered in accordance with the Local Rules. I further certify that a courtesy copy of the foregoing was forwarded to Bruce Garcia, Assistant Attorney General and the Attorney in Charge for Defendants by first-class U.S. mail.

*/s/ Mie Lewis*
Mie Lewis