# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| K.C., on behalf of herself and all others similarly situated, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>Richard Nedelkoff, in his official capacity as Conservator of the Texas Youth Commission, *et al.*,<br><br>　　　　Defendants. | Civil No. 6:09-CV-012-C<br><br>Hon. Sam R. Cummings<br><br>**PLAINTIFFS' THIRD MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................... i

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** ............................................................................................................... 1

　1.　Background ................................................................................................................ 1

　2.　Applicable Sections of Rule 23 .................................................................................. 2

　3.　Relevant Facts ............................................................................................................ 3

　　a.　*Approximate Number of Class Members* ............................................................. 3

　　b.　*Class Definition* .................................................................................................... 3

　　c.　*Characteristics Common to the Class* .................................................................. 3

　　d.　*Common Questions of Law and/or Fact* .............................................................. 4

　4.　Typicality of Plaintiffs and Adequacy of Representation .......................................... 6

　5.　Class Notice .............................................................................................................. 10

　6.　Discovery ................................................................................................................. 10

　7.　Attorneys' Fees ........................................................................................................ 11

**CONCLUSION** .......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) .................................................................. 6

*Hassine v. Jeffries*, 846 F.2d 169 (3d Cir. 1988) ............................................................................ 6

*Helling v. McKinney*, 509 U.S. 25 (1993) ...................................................................................... 4

*Hiser v. Franklin*, 94 F.3d 1287 (9th Cir. 1996) ............................................................................ 4

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001) .......................................................... 3, 7, 8

*Marcera v. Chinlund*, 595 F.2d 1231 (2d Cir. 1979) ..................................................................... 2

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ........................................... 3

**Statutes**

Civil Rights Attorney's Fee Award Act,  42 U.S.C. § 1988(b) ...................................................... 11

**Treatises**

Herbert Newberg & Alba Conte, 1 *Newberg on Class Actions* § 3.05 (3d ed. 1992) ................ 3, 5

Plaintiffs hereby move this Court for class certification pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.  Plaintiffs move for certification of a class defined as: "**all girls and young women who are now or in the future will be confined in Brownwood State School.**"  Plaintiffs also request that Plaintiffs' counsel be appointed to represent the certified class, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs submit this memorandum in accordance with LR 23.2 of the Local Civil Rules of the United States District Court for the Northern District of Texas.  In this Court's previous denial of class certification, the Court found that named Plaintiffs were atypical of the proposed class and that Plaintiffs were therefore inadequate class representatives.  (Order Denying Class Cert., Feb. 4, 2009, at 6.)  At that time, the Court noted that "should discovery reveal that Defendants' asserted defense [of atypicality and inadequacy] is without merits," the Court may reconsider the merits of class certification. *Id.* at 6 n.5.  Plaintiffs submit this memorandum in support of class certification in light of newly-revealed information demonstrating that Plaintiffs possess claims that are typical of the class and are adequate class representatives.

1.   *Background*:  This is a civil rights action brought by girls currently incarcerated in Brownwood State School ("Brownwood"), also known as Ron Jackson State Juvenile Correctional Complex, a youth prison operated by the Texas Youth Commission ("TYC"), on behalf of all girls and young women who are now or in the future will be confined at Brownwood.  This action challenges the TYC policies and practices permitting the imposition of punitive solitary confinement on girls in the absence of an immediate threat of physical injury.  This action also challenges the routine and unwarranted invasive body searching of incarcerated

girls. Plaintiffs allege that these practices are injurious to girls and inhibit rehabilitation, and that by maintaining such policies and practices, TYC violates the girls' rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiffs further allege that such policies and practices violate customary international law, including laws extending special protections to children, and those prohibiting torture and other forms of cruel, inhuman, and degrading treatment or punishment.

2.   *Applicable Sections of Rule 23*: Plaintiffs seek class certification pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, which provides for certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Here, Plaintiffs seek no money damages, but instead seek declaratory and injunctive relief against certain policies and practices of Defendants, because such policies and practices violate the Fourth, Eighth, and Fourteenth Amendment rights of each girl and young woman committed to TYC custody and incarcerated in Brownwood. The challenged policies and practices—namely, punitive solitary confinement, pepper spraying, and intrusive body searches—are official agency policies effectuated daily in Brownwood. This is a paradigmatic Rule 23(b)(2) case, because it is a civil rights action seeking to enjoin policies and practices of a government agency that are harmful to all members of the proposed plaintiff class. *See, e.g.*, *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir. 1979) ("It is well established that civil rights actions are the paradigmatic 23(b)(2) class suits, for they seek classwide structural relief that would clearly redound equally to the benefit of each class member."). This case therefore meets the requirements of Rule 23(b)(2).

3.  *Relevant Facts*: The relevant specific factual allegations concerning the class are set out below, as required by Local Rule 23.2:

   a. *Approximate Number of Class Members*: At any one time, the class consists of approximately 100-150 girls, equal to the population of girls confined at Brownwood. (Defs.' Opp. Class Cert. Ex. A (Adamski Aff.) ¶ 3, Dec. 19, 2009.) The class also includes an unknown number of girls who will be confined in Brownwood in the future and will be subjected to the challenged policies. The number of girls in Brownwood at any given time fluctuates slightly as some girls are released and others are newly confined. This fluctuation is likely to continue. The class is thus sufficiently numerous to render joinder impracticable and thus satisfies the requirements of Rule 23. *See James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001) (finding no abuse of discretion when district court certified a class based on allegation in complaint that class had 100 members); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 620 (5th Cir. 1999) (holding that district court did not abuse its discretion in certifying a class that had between 100 and 150 members; citing with approval Herbert Newberg & Alba Conte, 1 *Newberg on Class Actions* § 3.05, at 3-25 (3d ed. 1992), that a class of 40 raises a presumption that joinder is impractical).

   b. *Class Definition*: The class is defined as "**all girls and young women who are now or in the future will be confined in Brownwood State School.**"

   c. *Characteristics Common to the Class*: Plaintiffs and members of the putative class share numerous characteristics. Most centrally, they are all confined, or will be confined, at the same youth prison in Brownwood, Texas. Because they are all confined at Brownwood, all members of the class are subject to the policies and practices challenged

in this lawsuit regardless of each girl's individual disciplinary history; each class member's claim arises from the same course of conduct and is based on the same legal theories.[1] *See infra* Part 4. Neither Plaintiffs nor the unnamed class members have a financial incentive, as this suit seeks only injunctive relief. In any event, any individual girl may file her own claim for damages based on Defendants' conduct regardless of the outcome of this suit for injunctive and declaratory relief. *See Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) (("[T]he general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events.").

d. *Common Questions of Law and/or Fact*: Under Rule 23(a)(2), a single common question suffices to support class certification. Herbert Newberg & Alba Conte, 1 *Newberg on Class Actions* § 3.12, at 3-69 (3d ed. 1992). In this case, virtually every material issue of fact and law is common to the class. As to questions of fact, this lawsuit asserts that all girls in TYC custody, including each of the named Plaintiffs, have experienced or are at risk of experiencing solitary confinement and all have experienced body searches executed pursuant to TYC policies and practices. As discussed in greater depth *infra*, the majority of girls at Brownwood are subjected to punitive solitary confinement at least once each month, *see* LaBelle Decl. Exs. C-I, and all girls are subjected to invasive body searches regardless of their individual disciplinary histories, as such searches are conducted no less than twice per month, as well as after girls receive

---

[1] As Plaintiffs argued in their previous motion for class certification, as a result of Defendants' policies and practices, all the putative class members are at risk of having their rights violated by being placed in punitive solitary conditions for behavior that does not justify such treatment and by enduring invasive body searches. The mere fact that not all of the girls have yet suffered from such policies and practices does not mean that they are not at risk from those illegal policies and practices. *Cf. Helling v. McKinney*, 509 U.S. 25, 33 (1993) (court may enjoin possible future harm to prisoner even if prisoner has not yet suffered injury). Thus, there is no relevant difference in the standing of girls who have not yet suffered from Defendants' isolation policies and those girls who have actually been harmed by those policies.

visits, after each day's attendance at school, and at other times, even in the absence of probable cause to believe that a girl possesses contraband.  *See* Texas Youth Commission General Administrative Policy ("GAP") .97.9, *available at* http://austin.tyc.state.tx.us/Cfinternet/gap/97/gap979.htm (requiring pat and room searches at least twice monthly and permitting it at other times regardless of the absence of cause).

    The legal question is whether the existence and execution of these practices violate girls' rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and whether they violate customary international law.  Plaintiffs allege that a single application of these practices to a girl is unlawful; Plaintiffs' legal claims do not turn on the notion that a girl is repeatedly subject to the challenged practices.  Even so, as demonstrated *infra*, the great majority of girls are subjected to the challenged practices in any given month.  Moreover, commonality of conditions, combined with the difficulties inherent in individual prisoner litigation (compounded here by the youth of the prisoners), makes class certification "an especially appropriate vehicle in civil rights actions seeking . . . declaratory relief for prison . . . reform."  *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980); *see also Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) ("We have previously held, in a civil-rights suit, that commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.  In such circumstances, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality."); *Hassine v. Jeffries*, 846 F.2d 169, 178 (3d Cir. 1988).  Accordingly, this action satisfies the commonality requirement of Rule 23(a)(2).

4. *Typicality of Plaintiffs and Adequacy of Representation*: Questions of typicality and adequacy of representation tend to merge, since both requirements concern the protection of interests of unnamed class members. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). In Plaintiffs' first renewed motion for class certification, Plaintiffs argued that their claims are typical of the class and that they are adequate representatives of the class because "each named Plaintiff's claims arise from the same course of conduct as the claims of the putative class members and are based on the same legal theories as the claims of the class, namely that specific policies and practices employed in Brownwood constitute violations of domestic and international law." (Pls.' Mot. Class Cert., Dec. 9, 2008, at 5.)

Relying on Defendants' unsupported assertion that Plaintiffs have more severe disciplinary histories than other girls at Brownwood, this Court found that Plaintiffs neither presented claims typical of the class nor were adequate representatives of the class members. (Order Denying Class Cert., Feb. 4, 2009, at 6.) However, information provided to Plaintiffs by Defendants since this Court's ruling makes clear that Plaintiffs are not outliers and that Plaintiffs' disciplinary histories are representative of girls at Brownwood, neutralizing this Court's concerns and rendering Plaintiffs adequate representatives with typical class claims.

"[T]he critical inquiry [with regard to typicality] is whether the class representative's claims have the same essential characteristics of those of the putative class." *James*, 254 F.3d at 571. If Defendants' use of invasive body searching and punitive isolation violates Plaintiffs' civil rights, as Plaintiffs allege, the violation exists regardless of any girl's individual disciplinary history. Proving Defendants' constitutional violations does not depend on the individual circumstances of any particular child since it is Plaintiffs' position that Defendants' policies would never be justified regardless of disciplinary histories.

However, even if this Court does consider the individual disciplinary records of Plaintiffs and the putative class members to be relevant to the underlying legal questions, Plaintiffs do not possess "severe disciplinary histories" that are atypical of the putative class. Instead, because the majority of girls at Brownwood are referred to security at least once per month, and because all girls suffer invasive body searches regardless of their disciplinary records, *see* GAP .97.9 (requiring pat searching of every confined youth at least two times per month and permitting discretionary pat and strip searching at other times),[2] Plaintiffs' disciplinary histories are very similar to—if not the same as—those of the unnamed members of the class. *See James*, 254 F.3d at 571. Plaintiffs' claims are therefore typical of the class and consequently Plaintiffs are adequate representatives whose representation will not create conflicts within the class.

An examination of materials provided to Plaintiffs by Defendants makes clear the average nature of Plaintiffs' disciplinary records.[3] These records demonstrate that from June, 2008, to December, 2008, there were between 259 and 381 admissions per month to the "security" unit at Brownwood (LaBelle Decl. Exs. C-I), and that the majority of girls were admitted to security at least one time. *See, e.g.*, LaBelle Decl. Ex. C, at 1-4 (indicating that 69% of girls who were involved in at least one incident were admitted to isolation at least once in June 2008, amounting to approximately 62% of all girls at Brownwood); Ex. F, at 1-3 (demonstrating that 64% of girls at Brownwood who were involved in at least one incident were admitted to isolation once or more in September 2008, amounting to approximately 50% of all girls at Brownwood); Ex. I, at 1-3 (showing that 53% of all girls at Brownwood and 80% of girls involved in one or more disciplinary incidents were admitted to isolation at least once in

---

[2] The TYC GAP Manual is available at http://austin.tyc.state.tx.us/Cfinternet/gap/index.html.
[3] T.R. has been transferred to Corsicana Residential Treatment Center, a TYC youth facility in Corsicana, Texas, and therefore no longer seeks to represent the class. K.C. and H.C. remain confined at Brownwood and seek through this motion the certification of the class and their appointment as class representatives.

December 2008).[4]  These admissions were the result of between 619 and 1750 "incidents" each month, in which a Brownwood staff member completed a CCF-225 Incident Report form in response to a girl's behavior or to an interaction between staff and a confined girl.  Not every incident results in an admission to security.  Incident reports are filed in response to behavior as diverse as assault of another and failure to do proper housekeeping.  (LaBelle Decl. Ex. B, at 3-8.)  TYC collects aggregate data about the incident reports each month.  Each monthly report lists the name and TYC number of each girl who has been involved in at least one incident, as well as the total number of incidents in which she was involved over the course of that month, the total number of times she was referred to "security," the total number of times she was admitted to "security," and the alleged behavior underlying each reported incident.

Taken together, these reports demonstrate that Plaintiffs possess neither the most severe nor the least severe disciplinary histories among the girls confined at Brownwood.  Their disciplinary histories are entirely average.  Like other girls, there are months in which more incidents involving Plaintiffs are reported, and other months when fewer incidents involving Plaintiffs are reported.  *See* LaBelle Decl. Exs. C-I.[5]  In June 2008, for example, the first month for which Plaintiffs have incident report information, the average number of referrals to security was 8, and 135 out of the approximately 150 girls confined at Brownwood were involved in at

---

[4] These calculations were made by dividing the number of girls who had been admitted to isolation at least one time in the specified month by the total number of girls at Brownwood for whom an incident report was filed in that month.  The statistic regarding all girls at Brownwood was determined by dividing the number of girls who had been admitted to isolation at least one time in the specified month by the total number of girls at Brownwood, which Defendants admit is approximately 150.  For the sake of consistency, Plaintiffs used 150 as the total population of Brownwood for all relevant calculations.

[5] Pursuant to the Agreed Protective Order, the exhibits to Ms. LaBelle's declaration have been redacted.  When they were provided to Plaintiffs' counsel, the names of each girl had already been redacted.  Plaintiffs' counsel then used "TYC Numbers," which had not been redacted and which were printed in the first column of each monthly report, to determine which line items referred to Plaintiffs.  In order to comply with the protective order, Plaintiffs' counsel has further redacted all of the TYC numbers and renumbered each line in the exhibits, as described in Ms. LaBelle's declaration.

least one incident.[6] (LaBelle Decl. Ex. C, at 1-4.) The girl with the worst disciplinary record for the month was involved in 54 incidents, was referred to "security" 37 times, and was admitted to isolation 18 times. (LaBelle Decl. Ex. C, at 1 # 1.) K.C., the named Plaintiff with the worst disciplinary history for that month, by contrast, was involved in 28 incidents, was referred to "security" 17 times, and was admitted to security 6 times. *Id.* at 1 # 18. Seventeen girls were involved in more incidents than K.C., and 21 were referred to security as many or more times than K.C. *Id.* at ## 1-17. H.C. was involved in 24 incidents, was referred to "security" 10 times, and was admitted 8 times; 43 other girls were referred to "security" more often are as often as H.C. that month. *Id.* at 1 # 30. While Plaintiffs were indeed disciplined more in June 2008, than some girls, they were also disciplined less than others, and their referral numbers for that month are all clustered around the mean.

A similar pattern is repeated in each of the months for which Plaintiffs have data. *See* LaBelle Decl. Exs. C-I. In none of the months for which data is available do any of the three Plaintiffs present the most severe disciplinary histories found among girls at Brownwood. In fact, in one month, September 2008, H.C. was not admitted to security even once. Although she was involved in 34 incidents, all were apparently relatively minor, as none resulted in referrals to "security."[7] (LaBelle Decl. Ex. F, at 1 # 8.) That same month, K.C. was involved in 19 incidents, referred to "security" 11 times, and admitted 5 times. *Id.* at 1 # 26. The most severely disciplined girl that month was involved in 48 incidents, referred 18 times, and admitted to isolation 11 times; another girl was involved in 46 incidents, referred 30 times, and admitted 18 times. *Id.* at 1 ## 1-2. The average number of referrals to security that month was 6, and the

---

[6] All averages have been rounded to the closest integer.
[7] No further information on the nature of H.C.'s alleged offenses is available for September 2008, since the September monthly report omits details of any incidents that did not result in a referral to isolation. As is noted on the report's header, the report "!!Lists referrals only – All incidents too numerous to list!!" (LaBelle Decl. Ex. E, at 5.)

average number of admissions to the isolation unit was 2, again revealing that, while Plaintiffs do not have the least severe disciplinary histories of all girls confined at Brownwood, their records cluster around the average and are by no measure unusually severe. This newly-revealed information, then, proves that Plaintiffs possess average disciplinary records and therefore are adequate representatives possessing claims that are typical of those of the class.

Moreover, it appears that at the time of this Court's consideration of Plaintiffs' previous class certification motion, Defendants' counsel was uncertain of the identities of the named Plaintiffs. Defendants' counsel recently e-mailed Plaintiffs' counsel to request this information in order to comply with a discovery request. *See* Ehrlich Decl. Ex. 1. Nevertheless, the data discussed above proves Plaintiffs' adequacy as class representatives, and the typicality of Plaintiffs' claims when compared to those of the class.

5.  *Class Notice*: If this Court determines in its discretion that notice of certification should be made to all class members, Plaintiffs propose that notice to girls currently held in Brownwood be accomplished by means of a one to two page document, delivered to girls by TYC staff, explaining in terms intelligible to children that a lawsuit has been filed and that class certification has been granted. This notice should include the names and contact information of Plaintiffs' counsel. Additional notice may be made to the class members' guardians via a notice posted prominently on the TYC website. If this Court deems it necessary, notice may also be mailed to each guardian individually, utilizing the records of children's guardians and their addresses maintained by TYC. If so ordered, Plaintiffs are prepared to submit to the Court a security deposit covering estimated photocopying costs and bulk mail postage costs.

6.  *Discovery*: At this time, Plaintiffs do not believe that any discovery will be necessary before the Court can render a ruling on the instant motion. Plaintiffs request that, should the

Court find that further information is required before ruling, the Court allow Plaintiffs thirty days to carry out such discovery.

7.     *Attorneys' Fees*:  Plaintiffs' counsel is representing Plaintiffs on a *pro bono* basis. Pursuant to the Civil Rights Attorney's Fee Award Act,  42 U.S.C. § 1988(b), attorneys' fees may be awarded to a prevailing plaintiff's counsel in a civil rights case brought under 42 U.S.C. § 1983.  Should Plaintiffs prevail, Defendants will be responsible for fees.  No financial burden will be placed on the Plaintiff class.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(2) should be granted, and Plaintiffs' counsel should be appointed to represent the certified class pursuant to Rule 23(g).

Respectfully submitted,

BY: */s/ Julie B. Ehrlich*

Julie B. Ehrlich (admitted *pro hac vice*)
Lenora M. Lapidus (admitted *pro hac vice*)
Mie Lewis (admitted *pro hac vice*)
Emily J. Martin (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
Telephone: (212) 519-7848
Fax: (212) 549-2580
jehrlich@aclu.org
llapidus@aclu.org
mlewis@aclu.org
emartin@aclu.org

Lisa Graybill
Texas State Bar No. 24054454
AMERICAN CIVIL LIBERTIES UNION OF TEXAS
P.O. Box 12905
Austin, TX 78711
Telephone: (512) 478-7300
Fax: (512) 478-7303
lgraybill@aclutx.org

Steven M. Watt (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
HUMAN RIGHTS PROGRAM
125 Broad St., 18th Floor
New York, NY 10004
Telephone: (212) 519-7870
Fax: (212) 549-2580
swatt@aclu.org

Elizabeth Alexander (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 15th St, 6th Fl.
Washington, D.C. 20005
Telephone: (202) 393-4930
Fax: (202) 393-4931
ealexander@npp-aclu.org

        Deborah LaBelle (admitted *pro hac vice*)
        221 N. Main St., Ste. 300
        Ann Arbor, MI 48104
        Telephone: (734) 996-5620
        Fax: (734) 769-2196
        deblabelle@aol.com

        Steven R. Daniels
        Texas State Bar. No. 24925317
        Gretchen S. Sween
        Texas State Bar No. 24041996
        DECHERT LLP
        301 West 6th Street, Suite 1850
        Austin, TX 78701
        Telephone: (512) 394-3000
        Fax: (512) 394-3001
        steven.daniels@dechert.com
        gretchen.sween@dechert.com

        Robert A. Cohen (admitted *pro hac vice*)
        Erika B. Gellert (admitted *pro hac vice*)
        DECHERT LLP
        1095 Avenue of the Americas
        New York, NY 10036
        Telephone: (212) 698-3500
        Fax: (212) 698-3599
        robert.cohen@dechert.com
        erika.gellert@dechert.com

Dated: April 8, 2009

**CERTIFICATE OF SERVICE**

I, JULIE BETH EHRLICH, hereby certify that on April 8, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system that will send a notification of such filing to all counsel of record who have registered in accordance with the Local Rules.  I further certify that a courtesy copy of the foregoing was sent to Bruce Garcia, Assistant Attorney General and the Attorney in Charge for Defendants by first-class U.S. mail.

*/s/ Julie B. Ehrlich*
Julie B. Ehrlich

**CERTIFICATE OF CONFERENCE**

I, JULIE BETH EHRLICH, hereby certify that on April 6, 2009, I conferred by email with Defendants' counsel, who informed me that Defendants will oppose this motion.

*/s/ Julie B. Ehrlich*
Julie B. Ehrlich