# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF TEXAS
# SAN ANGELO DIVISION

| | |
|---|---|
| K.C., on behalf of herself and all others similarly situated, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>C.K. Townsend, in her official capacity as Executive Commissioner of the Texas Youth Commission, *et al.*,<br><br>　　　　　Defendants. | Civil No. 6:09-CV-012-C |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS AS MOOT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................**Error! Bookmark not defined.**

I.  INTRODUCTION ................................................................................................. 1

II. PROCEDURAL HISTORY ................................................................................... 3

III. ARGUMENT .......................................................................................................... 4

   A. Because This Is a Putative Class Action, an Exception to the Mootness Doctrine Applies ............................................................................................................... 4

   B. Because the Wrongs Alleged Are Capable of Repetition Yet Evading Review, an Exception to the Mootness Doctrine Applies ................................................... 9

IV. CONCLUSION..................................................................................................... 13

CERTIFICATE OF SERVICE ................................................................................................ 15

## TABLE OF AUTHORITIES

**Federal Cases**

Cruz v. Hauck,
    627 F.2d 710 (5th Cir. 1980) ...................................................................................11, 12

Deposit Guaranty Nat'l Bank v. Roper,
    445 U.S. 326 (1989)..................................................................................................5, 6

Dunn v. Blumstein,
    405 U.S. 330 (1972)......................................................................................................12

Edwards v. Johnson,
    209 F.3d 772 (5th Cir. 2000) .........................................................................................5

First Nat'l Bank of Boston v. Bellotti,
    435 U.S. 765 (1978)......................................................................................................12

Gerstein v. Pugh,
    420 U.S. 103 (1975)..............................................................................................5, 6, 13

Grant v. Gilbert,
    324 F.3d 383 (5th Cir. 2003) .....................................................................................7, 8

Herman v. Holiday,
    238 F.3d 660 (5th Cir. 2001)— .....................................................................................5

Johnson v. City of Opelousas,
    658 F.2d 1065 (5th Cir. 1981) .......................................................................................8

Jones v. Diamond,
    519 F.2d 1090 (5th Cir. 1975) ..................................................................................1, 13

Moore v. Ogilvie,
    394 U.S. 814 (1969)........................................................................................................9

Norman v. Reed,
    502 U.S. 279 (1992)......................................................................................................12

Roe v. Wade,
    410 U.S. 113 (1973).........................................................................................................9

Singleton v. Apfel,
    231 F.3d 853 (11th Cir. 2000) .......................................................................................8

Sosna v. Iowa,
    419 U.S. 393 (1975) ..........................................................................................5, 9

Southern Pac. Terminal Co. v. ICC,
    219 U.S. 498 (1911) .............................................................................................9

Stewart v. Winter,
    669 F.2d 328 (5th Cir. 1982) ............................................................................ 8, i

Sze v. Immigration & Naturalization Serv.,
    153 F.3d 1005 (9th Cir. 1998) .............................................................................8

United States Parole Commission v. Geraghty,
    445 U.S. 388 (1980) ........................................................................................6, 7

Zeidman v. J. Ray McDermott & Co., Inc.,
    651 F.2d 1030 (5th Cir. 1981)  ..............................................................5, 6, 7, 8

**Federal Statutes**

42 U.S.C. § 1997e(a) (2000) ...................................................................................4, 10

**State Statutes**

37 Tex. Admin. Code § 93.31 (2008) .....................................................................4, 10

37 Tex. Admin. Code § 93.53 (2005) .....................................................................4, 10

Plaintiff H.C. files this Opposition to Defendants' Motion to Dismiss Plaintiff's Claims as Moot (Doc. 81), and respectfully shows the Court the following:

## I.  INTRODUCTION

Plaintiff H.C. has sought to serve as a class representative in this lawsuit, which challenges unlawful policies and conditions at a Texas Youth Commission (TYC) facility, the Ron Jackson State Juvenile Correctional Complex in Brownwood, Texas ("TYC-Brownwood"). The target of the lawsuit is not, as Defendants suggest, TYC officials in their individual capacities;[1] rather, this lawsuit—on its face and from the outset—names Defendants only in their "official capacit[ies]." *See* Docs. 1, 17, 80-2. This lawsuit challenges certain policies and practices imposed on girls at TYC-Brownwood—including the excessive and routine use of punitive solitary confinement, improper use of force, and intrusive body searches. This lawsuit also addresses the profound psychological and emotional injury that is routinely inflicted on mentally ill girls or girls with histories of traumatic abuse when they are violently restrained or placed in solitary confinement—particularly when these actions occur in response to a mental health crisis or an impulse to self-injure. The wrongs alleged by Plaintiff can only be redressed through class-wide injunctive relief; no monetary damages or individual injunctive relief is sought.

The practice of forcibly restraining and isolating girls in the TYC-Brownwood "Security Unit" has not changed significantly since this lawsuit was filed. *See* Docs. 80 at 12-14 & 80-4 at App. 1-44. The merits of these girls' claims deserve to be heard—but cannot be heard unless and until a class is certified. *See Jones v. Diamond*, 519 F.2d 1090, 1097 (5th Cir. 1975)

---

[1] *See* Doc. 81 at 1-2 (erroneously stating that Defendants have been sued "in their individual capacities only").

1

("Realistically, class actions are the only practicable judicial mechanism for the cleansing reformation and purification of these penal institutions.").

After a year-long quest to obtain class certification and an adjudication on the merits, on August 21, 2009, Plaintiff H.C. filed a Motion for Leave to Amend and to Join Plaintiffs, with the Second Amended Complaint naming new Plaintiffs and Renewed Motion for Class Certification attached. *See* Docs. 80, 80-2, 80-3. Shortly thereafter, H.C. was released from TYC-Brownwood. *See* Doc. 81-2 (Affidavit of TYC Superintendent Adamski) ¶ 6. H.C. was aware that she might be released before the Court had an opportunity to rule on her motions; therefore, H.C. apprised the Court of this issue in the very first sentence of her Motion for Leave to Amend. *See* Doc. 80 at 1. Moreover, the Renewed Motion for Class Certification expressly addresses the concerns this Court raised in adjudicating Plaintiffs' two previous Motions for Class Certification.[2] Specifically, the new Plaintiffs named in the Second Amended Complaint have exemplary disciplinary histories; thus, the concerns about adequacy and typicality that led the Court to deny H.C.'s previous requests for certification as a class representative should not disqualify the new Plaintiffs from service as class representatives. *See* Doc. 80-3 at 9-12 (delineating the exemplary histories of S.D. and B.P. during confinement at TYC-Brownwood and how the harm they have experienced is common to putative class members).

But before this Court has had an opportunity to consider the merits of the new putative class representatives' argument that they satisfy Rule 23(a)'s requirements and are not likely to be subject to unique defenses, Defendants filed the instant Motion to Dismiss (Doc. 81). In their Motion to Dismiss, Defendants do not and cannot argue that conditions at TYC-Brownwood

---

[2] Defendants unduly emphasize that Plaintiffs' first Motion for Class Certification was also denied; that motion was denied for purely procedural reasons and without prejudice because (1) it was filed before Defendants had appeared in the lawsuit and (2) the Court was not then aware that Defendants had agreed to waive the right to formal service. *See* Docs. 2, 26, & 27-30.

2

have changed such that the *substance* of Plaintiff's constitutional claims and the request for class-based injunctive relief are moot. *See* Doc. 80-4 at App. 1-44. Instead, Defendants rely solely on the fact that H.C. was released before other potential class representatives were able to (1) complete the exhaustion process mandated by federal law and TYC policy, (2) move to join this lawsuit, and (3) have their claims regarding threshold class-certification issues considered. Because long-standing exceptions to the mootness doctrine apply to this putative class action, Defendants' Motion to Dismiss should be denied.

## II. PROCEDURAL HISTORY

In recounting the procedural history of this lawsuit, Defendants do not mention several facts critical to adjudicating the instant motion. Those facts are highlighted below.

The original Complaint named as Plaintiffs and putative class representatives five girls then in TYC custody. *See* Doc. 1 at 1. A Motion for Class Certification was filed concurrently with the Complaint. *See* Doc. 2. That first Motion for Class Certification was denied, without prejudice, for purely procedural reasons—because the Court erroneously believed that Defendants had not yet been served. *See* Doc. 26. In fact, Defendants had received copies of the original Complaint even before it was filed; they then agreed to waive the right to formal service, but had not yet returned executed Waiver of Service papers that had been timely provided to them by Plaintiffs. *See* Docs. 27-30.

By the time Plaintiffs filed a Renewed Motion for Class Certification on December 9, 2008, two of the five Plaintiffs named in the First Amended Complaint had been released from TYC custody. *See* Doc. 36 at 2 n.1. On February 4, 2009, the Court denied Plaintiffs' Renewed Motion for Class Certification. *See* Doc. 61. A few days later, on February 8, 2009, Plaintiffs filed their Third Motion for Class Certification (Doc. 66). Defendants requested and received additional time to file an opposition. *See* Docs. 67 & 68. By the time Defendants filed their

3

opposition, only one named Plaintiff, H.C., was still being held at TYC-Brownwood. Defendants' opposition relied principally on the contention that H.C. had a particularly troublesome disciplinary history; therefore, Defendants argued, there would be unique defenses that could be leveled against her, thereby making her atypical and thus inadequate as a class representative. *See* Doc. 71.

In subsequent months, Plaintiffs' counsel continued to meet with additional girls incarcerated at TYC-Brownwood who have been harmed by the unconstitutional policies and practices at issue in this lawsuit. *See, e.g.,* Docs. 76-1 & 76-2; *see also* Doc. 80-4 at App. 13-44. But before any girl could join this lawsuit as a named plaintiff, she had to first exhaust the grievance process that applies at TYC-Brownwood pursuant to the Prison Litigation Reform Act ("PLRA") and TYC policy. *See* 42 U.S.C. § 1997e(a) (2000); 37 Tex. Admin. Code § 93.31 (2008) (Youth Grievance System); 37 Tex. Admin. Code § 93.53 (2005) (Appeal to Executive Director). Even when moving with absolute efficiency, completing the process takes ***months***. *See id.*; *see also* Docs. 76-1 & 76-2.

As soon as new Plaintiffs were eligible to join, H.C. filed Plaintiff's Motion for Leave to Amend and to Join Plaintiffs (Doc. 80), attaching the proposed Second Amended Complaint, which adds S.D. and B.P. as named Plaintiffs and putative class representatives (Doc. 80-2),[3] and a Renewed Motion for Class Certification (Doc. 80-3), wherein S.D. and B.P. seek to be certified as class representatives.

**III.   ARGUMENT**

    **A.   Because This Is a Putative Class Action, an Exception to the Mootness Doctrine Applies**

---

[3] Pursuant to the Agreed Protective Order (Doc. 35), "S.D." and "B.P." are pseudonyms. Plaintiff's counsel has informed Defendants' counsel of the identities of these girls, which all parties are required to keep confidential.

4

Defendants do not and cannot suggest that there are no remaining members of the proposed class or that the underlying claims have been mooted by global policy changes; in seeking dismissal, they rely solely on the fact that H.C. was released before a class was certified. *See* Doc. 81. But the fact that a class has not yet been certified is not dispositive of the mootness issue. *See, e.g., Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326 (1989) (holding named plaintiffs in a *proposed* class action could continue to appeal denial of class certification even after the named plaintiffs had settled their personal claims for the full amount of their damages). Based on controlling precedent analyzing the mootness doctrine, the critical questions here are: Did H.C. have standing to bring the substantive claims when class certification and leave to amend were pursued (the "personal stake" requirement), and are there other members of the putative class with live claims (the "live controversy" requirement)? *See Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1041-42 (5th Cir. 1981). The answer is "Yes" to both questions—and defendants do not suggest otherwise.

Defendants misapprehend how the mootness doctrine operates in this context. Indeed, both cases upon which Defendants rely—*Edwards v. Johnson*, 209 F.3d 772 (5th Cir. 2000) and *Herman v. Holiday*, 238 F.3d 660 (5th Cir. 2001)—are inapposite; neither were putative class actions, but were individual actions ***only***. Decades ago, the Supreme Court adopted a flexible approach to mootness in the class-action context, based on the recognition that the "class of unnamed persons described in the certification acquir[e] a legal status separate from the interest asserted by the [named plaintiff]." *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). Therefore, as long as ***members*** of a class have a live controversy, the case can continue. *Id. Sosna* involved a situation where the named plaintiff had already been certified to represent a class when her personal interest in the case became moot. *See id.* Subsequently, however, the Supreme Court expanded the exception announced in *Sosna*. In *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11

(1975), for instance, the Court emphasized that an exception to the mootness doctrine applies in cases, such as this one, where the plaintiff is in state custody and that custody "may be ended at any time" by a state actor. Mootness, the Supreme Court emphasized, is simply not an issue if "the constant existence of a class of persons suffering deprivation is certain" and a pool of clients are available to counsel "with a continuing live interest in the case." *Id.* Similarly, the Supreme Court has recognized that, where other potential class members still have a live controversy, it would work an injustice to allow defendants to "buy off" named plaintiffs in class action litigation by settling their personal claims. *Deposit Guaranty Nat'l Bank*, 445 U.S. at 339.

In prison condition class actions, the Supreme Court has expressly held that, the "personal stake" requirement of the mootness doctrine can be met despite the lack of a "legally cognizable interest" in "the traditional sense." *See United States Parole Commission v. Geraghty*, 445 U.S. 388, 403-04 (1980); *see also Zeidman*, 651 F.2d at 1041-43 (discussing *Geraghty* and the requirement simply that "[t]he classes which the plaintiffs seek to represent contain at least some number of persons who [experienced the factual basis for the class allegations] during the periods at issue"). In *Geraghty*, the representative plaintiff was a federal prisoner who had brought a proposed class action challenging parole guidelines. 445 U.S. at 402. The district court denied class certification, and Geraghty appealed that decision as class representative. Geraghty was released from prison while the appeal was pending, and defendants sought to dismiss the appeal as moot. The Supreme Court held that, despite the expiration of Geraghty's claim, the claims of the class survived.[4] *Id.* at 400.

---

[4] Defendants inaccurately assert that *Geraghty* holds that mootness can only be avoided through certification of a class before the named plaintiff's personal claim expires. Doc. 81 at 5. The *Geraghty* court makes this statement in summarizing prior case law, but actually "hold[s] that an action brought on behalf of a class ***does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied***." *Geraghty*, 651 F.2d at 1212 (emphasis added).

6

In *Zeidman*, the Fifth Circuit applied *Geraghty* and observed that, despite the mootness of the representative plaintiff's claims, the controversy was "undoubtedly still live," because the ***proposed*** classes still contained at least some individuals who satisfied the class definition and were at risk of suffering injury from the challenged practices. 651 F.2d at 1042. That is, despite the mootness of the representative plaintiff's claims in *Geraghty* and *Zeidman*, both reviewing courts—the Supreme Court and the Fifth Circuit, respectively—found that if a live controversy existed for at least some class members, the case was not moot. The *Geraghty* Court also emphasized the fact that other prisoners affected by the parole guidelines had moved to substitute, or intervene, as class representatives—which is precisely the case here. 445 U.S. at 396; *see also* Docs. 80-2 & 80-3.

Recently, the Fifth Circuit has observed that one can properly "assume [that] a live controversy still exists" even where no parties have sought to intervene or substitute in place of the named plaintiff. *Grant v. Gilbert*, 324 F.3d 383, 389 (5th Cir. 2003). In *Grant*, the Fifth Circuit noted that the proposed class counsel, "a legal service agency," had assured the Court "that it represents other clients, with a continuing live interest in the case, who can represent the class if necessary." *Id.* at 389-90. Counsel for Plaintiffs here have provided similar assurances. *See* Docs. 76-1, 76-2, 80-4 at App. 13-44. Moreover, as opposed to the circumstances in *Grant*, here the existence of a live controversy is indisputable because parties have already sought to join this as named Plaintiffs in place of H.C. *Cf. Grant*, 324 F.3d at 389.

Grant is also instructive here in that the Fifth Circuit carefully distinguishes between the "live controversy" and "personal stake" requirements in discussing the mootness doctrine in the class action context. In *Grant* the Court found that members of the proposed class still had a live interest in the case even though the proposed class representative's claims might have been moot; the problem for the proposed class representative was that the Fifth Circuit concluded that

7

he "***never had standing***"—*i.e.*, a personal stake—as to most of the class claims at any time and thus he "cannot be said to be 'self-interested' or capable of presenting the claims as 'sharply presented issues.'" *Id*. at 390 (emphasis added, citations omitted).  Here, Defendants do not contend that H.C. never had standing; they simply rely on the fact that she was released from TYC custody *after* she had moved for leave to amend, to add new plaintiffs, and to certify a class.  Likewise, this is ***not*** a case in which the entire class's claims have been mooted because of the defendant's general policy change. *See by contrast Singleton v. Apfel*, 231 F.3d 853, 854-55 (11th Cir. 2000); *Sze v. Immigration & Naturalization Serv.*, 153 F.3d 1005, 1009-1010 (9th Cir. 1998).  Indeed, the Fifth Circuit has ***directed*** district courts to certify a class in cases similar to this one to avoid mootness. *See, e.g., Johnson v. City of Opelousas*, 658 F.2d 1065, 1068-71 (5th Cir. 1981) (directing court to certify putative class of juveniles in face of maturing of the named plaintiffs); *cf. Zeidman*, 651 F.2d at 1050 (finding that, where class certification motion was pending and defendant then acted so as to moot named plaintiff's claims, certification would relate back to the outset of the action to avoid mootness); *see also Stewart v. Winter*, 669 F.2d 328, 333-34 (5th Cir. 1982) (emphasizing that named plaintiffs could be released within less than a year therefore "class certification ensures the presence of a continuing class of plaintiffs with a live dispute against prison authorities").

In short, the mootness doctrine does not apply here where Plaintiff H.C. had a personal stake in the litigation when the complaint was filed and when she moved for leave to amend and to join plaintiffs, and where members of a proposed class have a current live controversy and are willing to pursue the claims for class-wide relief initially pursued by H.C. and others no longer in TYC custody.

### B. Because the Wrongs Alleged Are Capable of Repetition Yet Evading Review, an Exception to the Mootness Doctrine Applies

The wrongs at issue here also implicate the mootness exception for wrongs "capable of repetition but evading review." *See Sosna*, 419 U.S. at 401 (explaining that the challenged one-year residency requirement was shorter than the usual course of litigation). Indeed, the Supreme Court long ago recognized that some injuries are of a relatively short duration such that they are likely to be moot before those wrongs can be fully addressed in federal litigation. When such injuries are likely to recur, the Court may continue to exercise jurisdiction over the plaintiff's claims notwithstanding the fact that the claim has become moot. *See Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 514-15 (1911) (seminal case articulating mootness exception in challenge to an Interstate Commerce Commission order that had expired because such orders might be "capable of repetition, yet evading review"); *see also Roe v. Wade*, 410 U.S. 113, 125 (1973) (finding duration of pregnancy inherently likely to be shorter than time required to resolve most federal litigation).

Two criteria must be met to satisfy this exception to the mootness doctrine: (1) the injury must be of a type such that a reasonable chance exists that it will happen to the plaintiff again; and (2) the injury must be a type that is of inherently limited duration so that it is likely to become moot before federal litigation is completed. *See, e.g., Moore v. Ogilvie*, 394 U.S. 814 (1969) (finding exception applied in case challenging state requirement that independent candidate obtain a certain number of signatures to get on the ballot where election had been held before case was heard). Plaintiff's claims readily satisfy these two criteria.

First, as long as proposed class members remain in TYC-Brownwood custody, and even after they have been released but remain on parole, there is a reasonable chance that they will

9

again be subjected to or threatened with excessive use of punitive solitary confinement, forcible restraint, and intrusive searches. *See* Doc-3 at 4-5 (explaining nature of the harm alleged).

Second, the injuries at issue here are of a type that is inherently limited in duration. Indeed, the terms of incarceration for juveniles are more often measured in months than years; thus each girl's personal claims are likely to become moot before federal litigation could be completed. TYC reports that in 2008 the average length of a stay in its facilities was 16.9 months.[5] While TYC has not publicly reported the average length of a stay for girls at TYC-Brownwood, it is likely to be significantly shorter than the overall average, because, according to TYC data, the offenses girls commit are usually less serious than those of boys.[6] Girls' relatively short terms in TYC custody mean that, by the time girls enter TYC-Brownwood, experience the violations at issue in this lawsuit, confer with attorneys, and decide to participate as plaintiffs, they are often already on the brink of their release dates. Moreover, minors cannot join an action without the consent and participation of their legal guardians. Therefore, the guardians must also confer with attorneys, be apprised of the case, and decide to participate—a process that can add weeks of additional, unavoidable delay.

These challenges are compounded by the administrative exhaustion requirements of the PLRA. *See* 42 U.S.C. § 1997e(a). The PLRA requires prisoners, including juvenile prisoners, to exhaust all available administrative remedies before they may file suit. *Id.* TYC's grievance policy involves three stages of written grievances, each of which is separated by waiting periods of fifteen to thirty working days. 37 Tex. Admin. Code § 93.31 (2008) (Youth Grievance System); 37 Tex. Admin. Code § 93.53 (2005) (Appeal to Executive Director). In addition to the

---

[5] *See* Texas Youth Commission, "TYC Population Trends," http://www.tyc.state.tx.us/research/growth_charts.html, accessed Aug. 5, 2009.

[6] *See* Texas Youth Commission, "Reasons for Commitments to TYC in Fiscal Year 2008," http://www.tyc.state.tx.us/research/commit_gender.html, accessed Aug. 5, 2009.

administratively mandated waiting periods, more delay is inevitable because girls who wish to participate in this action require the assistance of attorneys to exhaust the grievance system, yet such assistance can only be arranged through TYC staff.[7]  Simply scheduling telephone calls and in-person visits is a time-consuming task, complicated by myriad variables: the difficulty girls have obtaining grievance forms, private rooms, and even writing instruments; TYC employees' own unfamiliarity with the grievance process; and the necessity of scheduling consultations around caseworker availability, educational activities, meals, and TYC security protocols.  *See, e.g.,* Doc. 80-4 at App. 45-48.[8]

Each Plaintiff in this lawsuit—past, current, and proposed—seeks injunctive relief to end unconstitutional practices that affect a large, particularly vulnerable, and transient population; and their injuries are capable of repetition yet evading review.  Therefore, these Plaintiffs are akin to those in *Cruz v. Hauck*, 627 F.2d 710 (5th Cir. 1980) (holding denial of class certification on mootness grounds was improper).  *Cruz* involved indigent prisoners who had brought a putative class action challenging "regulations restricting inmates' use and possession of legal materials."  *Id.* at 712.  The Fifth Circuit concluded that it had been "improper to consider the alleged mootness of the claims of the class in determining whether to certify the action as a class action."  *Id.* at 715.  Moreover, the Court found it "improper to deny certification on the ground

---

[7] Defendants suggest that because some girls have filed ***initial*** grievances that somehow shows that no girls in TYC custody require assistance to complete the multi-step appeals process required to exhaust.  But Defendants have no evidence that any girls who have sought to join this lawsuit have ever ***exhausted*** the multi-step appeals process, which is a prerequisite to suing, without the assistance of counsel.  *See* Doc. 83-2 (Exhibit A:  Affidavit of Thomas Adamski) at 3 (admitting that they use only initial grievances and "[tho]se numbers do not include grievances that the youth may have appealed to a higher authority.").

[8] *See also* Letter from Wan J. Kim, Assistant US Attorney General, to Texas Governor Rick Perry, March 15, 2007, http://www.dallasnews.com/sharedcontent/dws/img/03-07/0316tycletter.pdf at 9 (describing the grievance system at another TYC facility as "dysfunctional"), accessed May 31, 2009.

that the individual claims of the named plaintiffs were moot"—*even though* "there was no motion for certification until after the named plaintiffs were no longer in the jail." *Id.* at 715, 716. The Fifth Circuit correctly emphasized that, although named plaintiffs "must initially have standing to bring suit," the case fit into the exception "for cases in which the injury complained of is 'capable of repetition, yet evading review.'" *Id.* at 715-16 (citation omitted). The Fifth Circuit reasoned that confinement in jail (as in a TYC facility) is "by its nature temporary," yet gives rise to the kind of individual claims that are "capable of repetition yet evading review." *Id.* at 716, 717. The Fifth Circuit also noted that *although* "at the time the repleaded complaint was filed and the motion for certification made, none of the named plaintiffs were in the jail," and "*aside* from the fact that the claims of the named plaintiffs were 'capable of repetition, yet evading review,' *the plaintiffs also attempted to add a named plaintiff who was confined in the jail*." *Id.* at 718 (emphasis added). Likewise, here, an amended complaint and renewed motion for class certification were filed *before* H.C.'s individual claim was mooted; *a fortiori*, under binding Fifth Circuit precedent, dismissing this putative class action on mootness grounds would be improper. *See id.* at 718-19 (finding denial of certification improper where named plaintiffs with mooted individual claims moved to certify a class immediately after repleading complaint and seeking to add named plaintiffs); *cf. Norman v. Reed*, 502 U.S. 279 (1992) (allowing challenge to law imposing obstacles to an election that was already two years old to continue); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978) (allowing challenge to law prohibiting corporations from spending money to influence ballot incentives because challenged conduct was a type that would likely arise in the future and there would not be enough time for the matter to be fully litigated, appealed, and decided before the election); *Dunn v. Blumstein*, 405 U.S. 330 (1972) (allowing challenge to one-year residency requirement to continue).

In sum, exceptions to the mootness doctrine in cases such as this one are made because the Supreme Court has determined that these exceptions further the underlying purposes of the federal rules governing class actions and are consistent with Article III concerns that an actual dispute between adverse litigants exist. As long as a ***potential*** class exists that presents a live controversy, the status of any particular named plaintiff's claim is irrelevant. *See Jones v. Diamond*, 519 F.2d 1090, 1097 (5th Cir. 1975) (noting that "[m]ootness, though often a serious difficulty in class action suits where the named plaintiff's claim becomes moot before class certification, is a similarly illusory problem in light of the Supreme Court's recent decision in *Gerstein v. Pugh*"). TYC has not and cannot suggest that H.C. never had standing or that no other putative class members are available and interested in pursuing this lawsuit. *See, e.g.,* Doc. 80-4 at App. 13-44. Therefore, Defendants' Motion to Dismiss should be denied.

## IV.  CONCLUSION

Before Defendants filed their Motion to Dismiss Plaintiff's Claims as Moot, Plaintiff H.C. had duly filed a Motion for Leave to Amend and to Join Plaintiffs, with Second Amended Complaint and Renewed Motion for Class Certification attached. *See* Docs. 80, 80-2, 80-3. Defendants' motion relies entirely on Plaintiff H.C.'s subsequent release from TYC custody as a basis for dismissal on mootness grounds. But because recognized exceptions to the mootness doctrine apply, Plaintiff respectfully asks that the Court deny Defendants' motion and grant Plaintiff's previously filed Motion for Leave to Amend so that new putative class representatives may join the lawsuit and pursue both class certification and resolution of the underlying claims on the merits.

DATE:  September 14, 2009

13

Respectfully submitted,

*/s/ Gretchen S. Sween*
Lenora M. Lapidus (admitted *pro hac vice*)
Emily J. Martin (admitted *pro hac vice*)
Mie Lewis (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
Telephone: (212) 519-7848
Fax: (212) 549-2580
jehrlich@aclu.org
llapidus@aclu.org
mlewis@aclu.org
emartin@aclu.org

Lisa Graybill
Texas State Bar No. 24054454
Gouri Bhat  (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION OF TEXAS
P.O. Box 12905
Austin, TX 78711
Telephone: (512) 478-7300
Fax: (512) 478-7303
lgraybill@aclutx.org

Steven M. Watt (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
HUMAN RIGHTS PROGRAM
125 Broad St., 18th Floor
New York, NY 10004
Telephone: (212) 519-7870
Fax: (212) 549-2580
swatt@aclu.org

Elizabeth Alexander (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 15th St, 6th Fl.
Washington, D.C. 20005
Telephone: (202) 393-4930
Fax: (202) 393-4931
ealexander@npp-aclu.org

>Deborah LaBelle (admitted *pro hac vice*)
>221 N. Main St., Ste. 300
>Ann Arbor, MI 48104
>Telephone: (734) 996-5620
>Fax: (734) 769-2196
>deblabelle@aol.com
>
>Steven R. Daniels
>Texas State Bar. No. 24925317
>Gretchen S. Sween
>Texas State Bar No. 24041996
>DECHERT LLP
>301 West 6th Street, Suite 1850
>Austin, TX 78701
>Telephone: (512) 394-3000
>Fax: (512) 394-3001
>steven.daniels@dechert.com
>gretchen.sween@dechert.com
>
>Robert A. Cohen (admitted *pro hac vice*)
>Erika B. Gellert (admitted *pro hac vice*)
>DECHERT LLP
>1095 Avenue of the Americas
>New York, NY 10036
>Telephone: (212) 698-3500
>Fax: (212) 698-3599
>robert.cohen@dechert.com
>erika.gellert@dechert.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on September 14, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system that will send a notification of such filing to all counsel of record who have registered in accordance with the Local Rules. I further certify that a courtesy copy of the foregoing was sent to Bruce Garcia, Assistant Attorney General and the Attorney in Charge for Defendants, by first-class U.S. mail.

>*/s/ Gretchen S. Sween*